UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| DONALD MacMILLAN | : | |
| | : | |
| v. | : | C.A. No. 07-428S |
| | : | |
| MICHAEL J. ASTRUE, Commissioner | : | |
| Social Security Administration | : | |

## MEMORANDUM AND ORDER

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Social Security Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"), 42 U.S.C. § 405(g).  Plaintiff filed his Complaint on November 27, 2007 seeking to reverse the decision of the Commissioner. On September 8, 2008, Plaintiff filed a Motion to Reverse the Decision of the Commissioner. (Document No. 8).  On October 9, 2008, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner.  (Document No. 9).

With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  Based upon my review of the record and the legal memoranda filed by the parties, I find that there is substantial evidence in the record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act.  Consequently, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commission (Document No. 9) be GRANTED and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 8) be DENIED.

## I.      PROCEDURAL HISTORY

Plaintiff filed an application for DIB on April 21, 2005, alleging disability as of November 9, 2004.  (Tr. 12).  Plaintiff is insured for DIB through December 31, 2009.  (Tr. 12, 56).  The application was denied initially (Tr. 30-32) and on reconsideration.  (Tr. 34-36). Plaintiff filed a request for an administrative hearing.  (Tr. 37).  On March 26, 2007, a hearing was held before Administrative Law Judge Barry H. Best (the "ALJ") at which Plaintiff, represented by counsel, his wife and a vocational expert appeared and testified.  (Tr. 230-282).

On June 29, 2007, the ALJ issued a decision unfavorable to Plaintiff.  (Tr. 12-21).  The Appeals Council denied Plaintiff's request for review on September 28, 2007.  (Tr. 4-7).  A timely appeal was then filed with this Court.

## II.      THE PARTIES' POSITIONS

Plaintiff argues that the ALJ failed to properly evaluate the opinions of the treating physician, Dr. Rosenberg, and the examining physicians, Dr. McGunigal and Dr. Buonanno. Finally, Plaintiff argues that the ALJ failed to properly evaluate his pain complaints.

The Commissioner disputes Plaintiff's claims and asserts that the ALJ properly weighed the record medical opinions in assessing Plaintiff's RFC and that there is substantial evidence to support the ALJ's decision to discount the credibility of Plaintiff's subjective complaints.

## III.      THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant

evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d  31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).   Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences.

Seavey, 276 F.3d at 8.  To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence four remand may be appropriate to allow her to explain the basis for her decision.  Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council).  After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction.  Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086,  1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

## IV.    DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if

it is unsupported by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B.   Developing the Record

The ALJ has a duty to fully and fairly develop the record.   Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.   Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D.       The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  <u>See</u> 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f).  Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five.  <u>Wells v. Barnhart</u>, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  <u>Davis v. Shalala</u>, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(I)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E.      Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases,

the Commissioner's burden can be met only through the use of a vocational expert.  Heggarty, 947 F.2d at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.      Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

 (3) Type, dosage, effectiveness, and adverse side-effects of any
pain medication;

 (4) Treatment, other than medication, for relief of pain;

 (5) Functional restrictions; and

 (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's

statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

  **2. Credibility**

 Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must

articulate specific and adequate reasons for doing so, or the record must be obvious as to the

credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly

articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia,

829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony

requires that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human

Servs., 803 F.2d 24 (1st Cir. 1986).

 A lack of a sufficiently explicit credibility finding becomes a ground for remand when

credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349,

1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility

determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such

testimony or the implication must be so clear as to amount to a specific credibility finding."

Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d

1251, 1255 (11th Cir. 1983)).

## V.      APPLICATION AND ANALYSIS

Plaintiff was forty-five years old at the time of the ALJ hearing and has an eleventh-grade education with previous relevant work experience as a boilermaker, welder/fabricator, car reconditioner and machine maintenance worker.  (Tr. 19, 71, 236).  Plaintiff alleged disability due to lower back pain (disc herniation and degenerative disc disease) (Tr. 69, 234) and mood disorder.  (Tr. 235).

On November 9, 2004, Plaintiff was treated at Rhode Island Hospital's Emergency Department, reporting a four-week history of lower back pain radiating to the leg with foot numbness. (Tr. 101).  He was diagnosed with lower back pain and was prescribed pain medications including Robaxin, Naprosyn, and Percocet. (Tr. 103).  He was provided with a release from work form indicating that he could return to work in three days. (Tr. 104).  The release further indicated that upon returning to work, Plaintiff should not lift anything heavier than five pounds, should not stoop or strain and should take frequent breaks to rest the injured area.  Id.

MRIs taken in November 2004 showed multi-level degenerative disc disease and spondylosis; a moderate to large central disc herniation at the L4-5 level deforming the thecal sac; and left lateral disc herniation at L5-S1 exerting mass effect upon the exiting left L5 nerve root with moderate right foraminal zone stenosis secondary to disc-osteophyte encroachment. (Tr. 109).

Dr. Jerrold Rosenberg first treated Plaintiff on November 11, 2004, and diagnosed him with lower back pain syndrome. (Tr. 123-124).  Nerve conduction studies performed on

November 15, 2004 were suggestive of radiculopathy. (Tr. 125-126). Over the course of several visits through June 27, 2006 with Dr. Rosenberg, Plaintiff remained on pain medication and his condition fluctuated, deteriorating particularly after a motor vehicle accident in January 2005; his self-reported pain level oscillated between levels 7 and 8 on a scale of 1 to 10, with an occasional 4 or 5. (Tr. 131, 132, 136, 138, 139, 141, 144, 158, 161-177). From November 2004 through March 2005, Plaintiff received physical therapy at Dr. Rosenberg's office as part of his treatment. (Tr. 213-222). In March 2007, Dr. Rosenberg limited Plaintiff to one to two hours of activity and lifting and opined that Plaintiff could not sustain competitive employment on a full-time basis. (Tr. 178, 179-180).

Dr. William S. Buonanno examined Plaintiff on February 23, 2005 on behalf of the State Temporary Disability Insurance ("TDI") Division. (Tr. 228). Dr. Buonanno reported that Plaintiff suffered from two disc herniations and sciatica in his left leg; he further noted that Plaintiff experienced difficulty getting on and off the examining table and exhibited some restricted movement and tenderness. Id. Dr. Buonanno concluded that Plaintiff "absolutely cannot work. He should not return to work until Dr. Rosenberg clears him to go back to work at such a physical job," i.e., his former work as a boilermaker. Id. Dr. Buonanno also found that it would be "another six to eight weeks before he could even potentially return to work." (Tr. 227-228).

An April 2005 MRI showed a small central disc protrusion at cervical vertebrae C2-3 and moderate to severe disc/osteophyte complexes at cervical vertebrae C3-4, C5-6 and C6-7 with "mild impressions upon the [spinal] cord." (Tr. 186). Foraminal narrowing was also noted. (Tr.

185).  An October 2006 MRI noted much of the same as the 2005 MRI: a small central disc protrusion at C2-3, without impingement upon the neural elements, that had decreased in size since April 2005; moderate to severe disc/osteophyte complexes at C3-4, C5-6 and C6-7 resulting in borderline central stenosis without significant change and accompanying moderate to severe bilateral foraminal narrowing.  Id.

Plaintiff's attorney arranged for Dr. Thomas McGunigal to examine Plaintiff on March 14, 2007.  (Tr. 182).  Dr. McGunigal noted Plaintiff's disc herniation but found Plaintiff had active range of motion in his legs and that his tandem gait and heel and toe walking was normal. (Tr. 184).  Moreover, Dr. McGunigal found an active lumbosacral spine range of motion with no tenderness, although he noted that Plaintiff limped, favoring his left leg; hopping on his left leg was abnormal due to pain.  (Tr. 183-184).  His ability to squat, rise from a squat, rise from sitting to standing and get on and off the examination table was also normal.  Id.  Plaintiff was able to touch the distal leg, well above the ankle. (Tr. 184).  In his physical capacity evaluation, Dr. McGunigal concluded that in an eight-hour workday Plaintiff was only capable of standing for one-quarter of an hour, sitting for one-quarter of an hour and walking for one-third of an hour.  Id.  He also concluded that Plaintiff was substantially limited.  He could not lift or carry any weight; was unable to push or pull; could never reach, bend, squat, kneel or crawl safely and could not be exposed to unexpected heights, moving machinery, noise, vibration, extreme temperature, dust, fumes and gas.  Id.

On April 18, 2007, Plaintiff saw DDS consultant examining physician Dr. Jay Burstein. (Tr. 223).  At this evaluation, Plaintiff told Dr. Burstein that he had low back pain that radiated

into his left buttock and back of his thigh, a pain aggravated by bending, walking and changing positions. (Tr. 223). Plaintiff stated, however, that he was able to bathe, dress, and groom himself and that he drove and assisted in household activities. Id. In contrast to Dr. Rosenberg and Dr. McGunigal, Dr. Burstein found Plaintiff was able to lift ten to fifteen pounds on a regular basis, although he could not bend or twist his lower back repetitively. (Tr. 225). Dr. Burstein also found no limitations in Plaintiff's ability to stand, walk or climb. Id. Additionally, he found no spinal or paraspinal tenderness. (Tr. 224). Straight leg-raise testing was negative. Id. Dr. Burstein found, as had Dr. McGunigal, that Plaintiff had a normal heel and toe gait. Id. He diagnosed chronic low back pain and degenerative disc disease of the lumbar spine with a history of intervertebral lumbar disc herniation. Id.

On August 2, 2005, Dr. Joseph Callaghan, a non-examining state agency physician, completed an RFC form in which he opined that Plaintiff was capable of lifting twenty pounds occasionally and ten pounds frequently, standing and/or walking for four hours out of an eight-hour workday, sitting for six hours and could only occasionally use his left leg for leg controls. (Tr. 115). Another state agency physician indicated his agreement with that assessment on October 15, 2005. (Tr. 121).

A.      The ALJ's Decision

The ALJ decided this case adverse to Plaintiff at Step 5. Plaintiff was found to have degenerative disc disease and a mood disorder. (Tr. 14). The ALJ concluded that these impairments were "severe" (20 C.F.R. § 404.1520(c)) but not of listing-level severity. (Tr. 14-15).

-15-

As to RFC, the ALJ found that Plaintiff was able to perform a wide range of sedentary work with a nonexertional restriction to simple work (assuming short work breaks every two hours on average). (Tr. 15). Although Plaintiff was deemed unable to return to his past medium and heavy occupations, the ALJ found that he was able to perform a substantial number of unskilled, sedentary jobs. (Tr. 20). The ALJ relied on the testimony of the VE in making this latter finding.

### B.      The ALJ Properly Weighed and Evaluated the Medical Opinions of Record

Plaintiff's argument is straightforward. Although there are several nuances, the basic premise is that the ALJ committed reversible error by favoring the orthopedic consultative evaluation of Dr. Jay Burstein over the other treating, examining and non-examining opinions of record. On April 18, 2007, Dr. Burstein examined Plaintiff and reviewed prior MRI and x-ray reports. See Ex. 14F. Dr. Burstein diagnosed chronic low back pain, degenerative disc disease and a history of lumbar disc herniation. (Tr. 224). Since Plaintiff's physical examination was basically normal, Dr. Burstein presumably based his findings on the 2004 MRI report and Plaintiff's subjective pain complaints. (Tr. 223-224). Dr. Burstein imposed a restriction of up to ten- to fifteen-pound lifting on a regular basis, limitations as to repetitive bending and twisting of the lower back and no limitations as to standing, walking or climbing. (Tr. 225).

In assessing his RFC for a limited range of sedentary work, the ALJ placed significant weight on the opinion of Dr. Burstein. (Tr. 16, 19). Plaintiff contests the weights given to the varying medical evaluations and opinions by the ALJ and essentially asks this court to re-weigh the medical evidence. However, it is not this Court's role to re-weigh conflicting evidence. This

issue is not whether this Court would have reached the same conclusion had it been responsible for reviewing this case in the first instance.  Rather, the issue is whether the ALJ's RFC finding is supported by substantial evidence and legally correct.  See Rodriguez-Pagan v. Sec'y of HHS, 819 F.2d 1, 4 (1st Cir. 1987) ("it is the [ALJ's] province to resolve conflicts in the medical evidence.").  In this case, the ALJ's treatment of the various medical opinions in the record is supported by substantial evidence and thus is entitled to deference.

Because a treating physician is typically able to provide a detailed longitudinal picture of a patient's impairments, an opinion from a treating source is generally entitled to considerable weight if it is well supported by clinical findings and not inconsistent with other substantial evidence of record. 20 C.F.R. §  404.1527(d); see also Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass. 2002) (The ALJ "may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors."). The amount of weight to which a treating source opinion is entitled depends in part on the length of the treating relationship and the frequency of the examinations. 20 C.F.R. § 404.1527(d)(1).  If a treating source's opinion is not given controlling weight, the opinion must be evaluated using the enumerated factors and "good reasons" provided by the ALJ for the level of weight given. 20 C.F.R. § 404.1527(d)(2).

Plaintiff has shown no error in the ALJ's decision to credit Dr. Rosenberg's March 2007 conclusion that Plaintiff was limited to one to two hours of activity a day.  Although Dr. Rosenberg treated Plaintiff fairly regularly between 2004 and 2007, he provided little explanation for his conclusion that Plaintiff was not able to do any work.  See Tr. 179-180.  That

conclusion conflicted with the report of Dr. Burstein, who determined that Plaintiff retained the ability to lift ten to fifteen pounds and could stand, walk and climb. (Tr. 225). Dr. Rosenberg's opinion that Plaintiff could not sustain any full-time, ongoing work was also inconsistent with his repeated notations throughout the course of the treatment relationship that Plaintiff's condition was improving, that his pain was responding to therapy, and that he was doing well with his medications. (Tr. 138, 139, 141, 144, 145, 161, 162, 163, 174, 175, 176). And, while Dr. Rosenberg cited to "positive EMG findings" in support of his conclusion that Plaintiff's pain was so severe as to preclude any full-time work (Tr. 181), Dr. Rosenberg's contemporaneous records note that these nerve conduction studies were only "borderline abnormal." (Tr. 126, 137, 172).

Moreover, the ALJ properly concluded that Dr. Rosenberg left open the possibility that Plaintiff could return to work of some kind. Although Dr. Rosenberg checked off a box on March 6, 2007 indicating he believed Plaintiff could not "sustain competitive employment on a full-time, ongoing basis," this conclusion conflicts with the other evidence on the record, such as Dr. Buonanno's assessment, which indicated the potential that Plaintiff might well be able to return to work in the future. (Tr. 180, 228). See Arruda v. Barnhart, 314 F. Supp. 2d 52, 72-73 (D. Mass. 2004) (affirming ALJ's decision not to afford controlling weight to treating source's opinion as expressed on a check-off sheet without explanation, where it conflicted with other record medical evidence). In fact, the ALJ drew a reasonable inference from the evidence in the record that Dr. Rosenberg considered only Plaintiff's return to work as a boilermaker. (Tr. 19). On March 5, 2007, Dr. Rosenberg noted that Plaintiff "remains out of work as a boilermaker.

This is a very physical job."  (Tr. 178).  In the absence of evidence to the contrary, the ALJ reasonably concluded that Dr. Rosenberg believed only that Plaintiff could not resume his previous heavy/unskilled job, not that he was precluded from sedentary jobs.

There is also substantial evidence in the record to support the ALJ's decision to discount Dr. McGunigal's report.  As a consultant examiner retained by counsel for the sole purpose of supporting Plaintiff's DIB claim, Dr. McGunigal's medical opinion is not entitled to the same consideration as that of a treating physician.  See 20 C.F.R. § 404.1502 (definition of "treating source" does not apply where relationship based "solely on your need to obtain a report in support of your claim for disability.").  The ALJ accurately noted that Dr. McGunigal's report is internally inconsistent.  (Tr. 18).  Dr. McGunigal noted that Plaintiff was able to squat and rise from a squat normally, yet he nonetheless concluded that Plaintiff could never bend or squat.  (Tr. 184).  He also noted that Plaintiff was able to touch his distal leg, which would suggest the capacity for bending.  Id.  Such inconsistencies on the face of a medical report provide adequate support for the ALJ's decision to decline to accord "full probative weight" to Dr. McGunigal's assessment.  See Rodriguez Pagan, 819 F.2d at 4 ("It is the [ALJ]'s province to resolve conflicts in the medical evidence."); accord Schmidt v. Astrue, 496 F.3d 833, 842 (7th Cir. 2007) ("An ALJ may discount a treating physician's medical opinion if the opinion is...internally inconsistent, as long as he minimally articulated his reasons for crediting or rejecting evidence of disability.") (internal citations omitted).

The record supports the ALJ's finding that Dr. Burstein's opinion was consistent with other evidence of record, and thus it properly supports the ALJ's RFC finding.  First, Dr.

Burstein's report was consistent with Plaintiff's testimony at the hearing that he could perform some daily activities.  Secondly, his opinion was also consistent with the findings of Dr. McGunigal that Plaintiff's tandem gait and heel and toe walking were normal, that Plaintiff experienced no spinal tenderness and that his ability to stand up was normal.  (Tr. 183-184).  Also included in the record is Dr. Buonanno's opinion that Plaintiff could not return to "such a physical job" but that Plaintiff might be able to return to work, perhaps "six to eight weeks" after his examination. (Tr. 228).   Although Plaintiff challenges the ALJ's interpretation of Dr. Buonnano's opinion as meaning Plaintiff could possibly return to his previous heavy work, he presents no reasonable basis for an alternative inference.  The ALJ referred to the "context" of Dr. Buonanno's evaluation. (Tr. 18, n.1).  The context was a TDI claim which assesses one's ability to return to his/her former work.  <u>See</u> R.I. Gen. Laws §§ 28-39-2(19) and 28-41-11 (a claimant is eligible for TDI benefits when he or she is physically or mentally "unable to perform his or her regular or customary work or services").  The ALJ's interpretation of Dr. Buonanno's report is supported by the record and consistent with Dr. Burstein's findings.  <u>See</u> 20 C.F.R. § 404.1527(d)(4).

Plaintiff finally takes issue with Dr. Burstein's failure to expressly opine on whether Plaintiff was able to sit or alternate sitting and standing.  To qualify as a DDS consultant examiner, Dr. Burstein must be a "highly qualified physician[ ]...who [is] also expert[ ] in Social Security disability evaluation."   20 C.F.R. § 404.1527(f)(2)(i).  As such, the ALJ could reasonably conclude that had Dr. Burstein found any limitations on something as basic as sitting, he would have included them in his opinion.  Additionally, Plaintiff's claimed extreme

limitations on sitting (no more than ten minutes – Tr. 254) derived solely from his subjective pain complaints and were never expressly documented by any of the doctors who examined him. The ALJ could therefore reasonably conclude that sitting was not a significant problem.

Plaintiff has shown no reversible error in the ALJ's decision to credit Dr. Burstein's opinion over those of other treating and examining physicians or in his assessment of an RFC for sedentary work with moderate non-exertional limitations. The ALJ's RFC assessment is supported by substantial medical evidence of record and thus is entitled to deference.

### C.    The ALJ Properly Evaluated Plaintiff's Subjective Complaints

Plaintiff also contends that the ALJ failed to properly apply the Avery analysis to his subjective complaints. However, Plaintiff has shown no reversible error in the ALJ's conclusions.

The ALJ determined that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were "not entirely credible." (Tr. 18). The ALJ concluded that Plaintiff's subjective complaints were not supported by the medical evidence and accurately pointed out that Plaintiff's allegation of total incapacity was inconsistent with the evidence as to his daily activities. Id. Significantly, this is not a case where the ALJ determined that Plaintiff could return to his prior work at the heavy exertional level. The ALJ did not even conclude that Plaintiff retained the RFC to perform medium or light work. Rather, the ALJ concluded that Plaintiff was only able to perform a limited range of sedentary work. See 20 C.F.R. § 404.1567(a) (a sedentary job involves sitting with occasional walking and standing, and

lifting limited to ten pounds).[1]   The ALJ simply found that the evidence of record regarding Plaintiff's ability "to perform most normal daily activities, although at a slowed pace" (Tr. 18) and Dr. Burstein's evaluation were inconsistent with Plaintiff's claimed limitations.  Plaintiff has shown no error.

## VI.    CONCLUSION

For the reasons stated above, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 9) be GRANTED and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 8) be DENIED. Final judgment shall enter in favor of Defendant.

  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
December 29, 2008

---

[1]  Plaintiff testified before the ALJ that he was able to lift a ten-pound bag of birdseed.  (Tr. 253).